1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DANIEL JOHN HONEYCUTT,                    No.  2:19-cv-01619 AC

12                    Plaintiff,

13        v.                                   **ORDER**

14   ANDREW SAUL, Commissioner of Social
     Security,
15
                     Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II

20   of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow,

21   plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for

22   summary judgment will be GRANTED.

23                            I.  PROCEDURAL BACKGROUND

24        Plaintiff applied for disability insurance benefits (DIB) under Title II of the Social

25   Security Act (Act) 42 U.S.C. §§ 401 *et seq*. in November 2012, alleging that he became disabled

26   as of September 9, 2003, due to a panic disorder and multiple sclerosis ("MS").  Administrative

27   ─────────────────────
     [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
28   who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); <u>Bowen v. City of New York</u>, 476 U.S. 467, 470 (1986).

1    Record (AR) 167-68, 184.  The Agency denied plaintiff's claims initially and on reconsideration.

2    AR 74-100.  After an administrative hearing (AR 614-48), Administrative Law Judge (ALJ) Mary

3    M. French issued a decision on August 15, 2014, finding plaintiff not disabled.  AR 21-34, 560-

4    73.

5          After the Appeals Council denied review (AR 583-84), plaintiff challenged the

6    Commissioner's decision in the United States District Court for the Eastern California (AR 586-

7    87).  On December 21, 2017, the district court remanded the matter to the agency, directing the

8    Commissioner to obtain a consultative examination with a mental health specialist.  AR 601-09.

9    Consistent with the court's order and instructions from the Appeals Council, the ALJ on remand,

10    Carol L. Buck, offered plaintiff the opportunity for new hearing (AR 523-26) and ordered a

11    consultative examination (AR 1140-49).  ALJ Buck held a hearing on September 25, 2018, with

12    plaintiff present and represented by attorney Jesse Kaplan.  AR 523.  Also present were Medical

13    Expert David Peterson, M.D., and Vocational Expert JoAnn Yoshioka.  Id.  On May 24, 2019, the

14    ALJ issued a decision, again finding plaintiff not disabled.  AR 493-516.  Plaintiff now seeks

15    judicial review of the May 2019 decision under 42 U.S.C. § 405(g).

16                    II.  FACTUAL BACKGROUND

17          Plaintiff was born in 1956, and accordingly was, at age 52, considered an individual

18    closely approaching advanced age when he filed his application.[2]  AR 167.  Plaintiff was last

19    insured as of December 31, 2008.  AR 496.  Plaintiff worked as an IT manager before became

20    unemployed in November of 2003.  AR 540, 547.  Plaintiff has completed two years of college

21    and can communicate in English.  AR 183, 185.

22                      III.  LEGAL STANDARDS

23          The Commissioner's decision that a claimant is not disabled will be upheld "if it is

24    supported by substantial evidence and if the Commissioner applied the correct legal standards."

25    Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

26    Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

27    v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

28    [2]  See 20 C.F.R. § 404.1563(d) ("person closely approaching advanced age").

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

////

////

3

IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.

> 2. [Step 1] The claimant did not engage in substantial gainful activity during the period since the alleged onset date of September 9, 2003 through his date last insured of December 31, 2008 (20 CFR 404.1571 et seq.).

> 3. [Step 2] The claimant has the following severe impairments: anxiety/panic disorder (20 CFR 404.1520(c)).

> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple repetitive tasks in a nonpublic work setting.

> 6. [Step 4] Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

> 7. [Step 5] The claimant was born [in 1956] and was 52 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

> 8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

> 9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 10. [Step 5, continued] Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a).

11.   The claimant was not under a disability, at any time from September 9, 2003, the alleged onset date, through December 31, 2008, the date last insured (20 CFR 404.1520(g)).

AR 496-516.  As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 516.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by (1) assessing an RFC that is not supported by substantial evidence; (2) improperly weighing the medical opinion evidence; (3) failing to comply with instructions on remand; and (4) improperly failing to credit plaintiff's subjective testimony. ECF No. 15 at 12-20.  Plaintiff contends that the case should be remanded for an immediate award of benefits.  Id. at 20.

A.  Plaintiff's Generalized RFC Argument is Not Persuasive

Plaintiff contends that the RFC was determined "without any explanation" and is deficient because it does not include a function-by-function analysis as required by Social Security Rulings (SSRs) 96-8p and 85-15.  ECF No. 15 at 13-14.  Having thoroughly reviewed the ALJ's decision and the evidence in the record, the court disagrees with his contention.  The ALJ gave an unusually detailed 13.5 pages of explanation for her assessment.  AR 500-514.  She found that plaintiff had the RFC to perform simple, repetitive tasks in a non-public work setting.  AR 500. The ALJ assessed these limitations based on  based on plaintiff's testimony, the medical record and medical opinions, as discussed in detail below.  AR 503; 500-14.

Plaintiff fails to explain what additional functional limitations should have been assessed in the RFC, and on what basis.  Plaintiff does not explain in what way the RFC should have been more restrictive than it was, or why he believes the ALJ's failure to better explain the basis for the RFC is anything other than harmless error.  The court will not remand this case so that the ALJ can edit the language of her opinion for clarity if the outcome of plaintiff's disability finding would be unaffected.  Because plaintiff fails to identify a missing limitation or explain why there is harmful error, the court finds no basis for remand here.

B.  The Medical Opinion Evidence Was Properly Evaluated

Plaintiff argues that the ALJ failed to properly credit treating physician Dr. Ehyai (ECF

No. 15 at 15-18) and improperly partially rejected the opinion of psychological consultant Dr. Regazzi (id. at 18-19).

### 1.   Medical Opinions and Records Considered

The ALJ reviewed the relevant medical opinions and/or records of (a) records of treating psychiatrist Dr. Jack H. Lindheimer; (b) opinions of insurance reviewing psychiatrists Dr. Donald Stanford and Dr. Kent Jordan; (c) records and opinions of treating neurologist Dr. A. Reza Ehyai; (d) opinions of agency psychological consultants Dr. Caruso-Radin and Dr. Warren; (e) opinion of psychological consultant on remand Dr. Michelina Regazzi; and (f) opinion of impartial medical expert Dr. David Peterson.

#### a.   Treatment by Dr. Lindheimer

From November 2003 through June 2004, plaintiff lived in Los Angeles and saw psychiatrist Jack Lindheimer, M.D.  AR 365-71, 407-09.  In November 2003, Dr. Lindheimer noted that plaintiff was currently unemployed "because of down sizing by his company" and his last day "at work" was September 8, 2003.  AR 365-66.  Plaintiff told Dr. Lindheimer that he went to the emergency room in February 2003 with heart symptoms, but all cardiac studies were negative, and he was subsequently diagnosed with panic disorder and prescribed Lexapro, and later prescribed Zoloft, as well as Xanax.  AR 365-66.  Dr. Lindheimer reported plaintiff was "significantly improved" although he continued to have periodic breakthrough symptoms.  AR 365-66.  Plaintiff explicitly endorsed no symptoms or mild symptoms in all relevant areas except for moderate problems with fatigue and panic attacks.  AR 369-70.  Plaintiff endorsed no problems with work, friendship, family, irritability, compulsive behavior, conduct problems, and obsessive thoughts, amongst others.  AR 367.  On examination, plaintiff was neatly groomed, oriented, and cooperative, with normal speech and thought process and intact cognitive function.  AR 368.  Based on plaintiff's reports, Dr. Lindheimer diagnosed panic disorder without agoraphobia, and anxiety disorder, and recommended treatment with Lexapro or low-dose Paxil and perhaps a trial of Klonopin, instructing plaintiff to reserve Xanax for use strictly as needed.  AR 365, 368, 371.

////

1    In December 2003, plaintiff reported minimal symptoms and some improvement with

2  panic attacks on Lexapro, though he reported increased fatigue.  AR 372.  Plaintiff told Dr.

3  Lindheimer that he was not looking for work, and the doctor noted that plaintiff's disability

4  insurance had been extended to February 1, 2004.  Id.  In January 2004, plaintiff again reported

5  minimal symptoms, except for moderate panic attacks and extreme fatigue.  AR 373.  Dr.

6  Lindheimer noted adjustments in plaintiff's medications, including the addition of Paxil and

7  discontinuation of Zoloft and Klonopin.  Id.  In February 2004, plaintiff endorsed minimal

8  symptoms overall, but endorsed moderate fatigue and panic attacks, and stated he was unable to

9  sustain the concentration required to look for a job.  AR 374.  He said he was walking a mile

10  every day, and tried to cut back on Xanax, but his chest pain returned.  Id.  Dr. Lindheimer again

11  told Plaintiff to limit his Xanax usage.  Id.

12    In March 2004, plaintiff told Dr. Lindheimer that he had improved significantly, from 20

13  percent to 60 percent functionality, and could return to work if he reached 80 percent

14  functionality.  AR 375.  In May 2004, plaintiff again reported minimal/stable symptoms, claiming

15  that he had improved to 70 percent functionality.  AR 376.  In June 2004, plaintiff continued to

16  report minimal/stable symptoms, with mild panic attacks that usually involved just mild

17  discomfort.  AR 377.  He told Dr. Lindheimer that he was moving to Sacramento, where his

18  father lived, at the end of the month.  AR 377.  Dr. Lindheimer completed a certification for

19  plaintiff's insurance carrier, stating that as a result of plaintiff's panic disorder, he responded to

20  stress with somatic symptoms, adding that plaintiff's condition was not yet stabilized, but he

21  would be expected to be able to return to his regular or customary work in August 2004.  AR 465.

22                    b.  Review and Opinions of Dr. Stanford and Dr. Jordan

23    In July of 2004, psychiatrist Donald Stanford, M.D., reviewed plaintiff's medical and

24  psychiatric records at the request of plaintiff's insurance carrier.  AR 448-52.  Dr. Stanford

25  observed that the treatment records were "very perfunctory, seemingly arbitrary, provide little

26  narrative information and often are partially illegible."  AR 450.  Dr. Stanford concluded that

27  plaintiff developed anxiety symptoms in February 2003, but continued to work, and was laid off

28  from his job in September of 2003.  AR 451-52.  Plaintiff's course of treatment was "quite

8

limited." AR 451.  Initially, he was treated by a neurologist, Dr. Imbus, and later saw a

psychiatrist, Dr. Lindheimer, and was laid off from his job as a billing system manager for a

communications company in September of 2003.  AR 451-52.  Dr. Stanford observed that there

was no indication that plaintiff had undergone any form of testing to identify psychiatric

symptoms or cognitive problems.  AR 451.  Dr. Stanford opined that plaintiff's "level of

symptomology is not consistent with preventing an individual from working."  Id.

In June 2005, psychiatrist Kent Jordan, M.D., conducted a psychiatric peer review of Dr.

Stanford's findings at the request of plaintiff's insurance carrier.  AR 457-64.  After reviewing the

evidence of record, Dr. Jordan opined that as of March 2004, plaintiff did not have a psychiatric

condition that was severe enough to prevent him from returning to work in his previous

occupation as of March 7, 2004.  AR 457.

### c.   The Treatment and Opinion of Dr. Ehayi

Plaintiff testified that he relocated from Los Angeles to Sacramento in 2004 "with the

intention of resuming my treatment with a neurologist."  AR 234.  Plaintiff began seeing

neurologist A. Reza Ehyai, M.D., who treated him under the diagnosis of panic disorder

beginning in 2005 through and past the 2008 date last insured for this case.  AR 378-402, 438-39.

Dr. Ehyai issued several opinions on plaintiff's condition.  AR 382, 384-85, 439, 453-56, 513.

In July 2005, plaintiff told Dr. Ehyai that his symptoms had improved, but he continued to

experience several panic attacks a week and had difficulty concentrating in stressful situations.

AR 388.  In response to plaintiff's reports of panic attacks, Dr. Ehyai increased plaintiff's dosage

of Xanax and propranolol (a beta blocker, used to treat hypertension and chest pain).  AR 389.

Dr. Ehyai observed that plaintiff had not taken Provigil (for sleep disorders) as previously

prescribed, claiming that he was unable to afford it.  Id.  He opined that plaintiff "is temporarily

totally disabled" and he would follow up with plaintiff in three months.  Id.

In September 2005, Dr. Ehyai reviewed Dr. Jordan's report prepared and advised

Plaintiff's insurance carrier that he believed plaintiff was unable to return to his usual and

customary occupation due to symptoms of panic attack and anxiety disorder, disagreeing with Dr.

Jordan's conclusion.  AR 453-54.  Dr. Ehyai stated that one cannot expect a patient with anxiety

1    or panic disorder to have abnormal mental status examination findings, and the diagnosis "should

2    be made on the basis of the patient's symptomologies." AR 454.  Dr. Ehyai stated that he had

3    seen plaintiff on several occasions and in his opinion, plaintiff could not return "to his usual and

4    customary occupation." AR 454.

5         Plaintiff met with Dr. Ehyai in October 2005, informing the doctor that he did not think he

6    could return to his past job as an IT manager because the pressure would trigger anxiety and panic

7    attacks. AR 386.  On examination, plaintiff appeared "somewhat anxious," but alert, oriented,

8    and in no acute distress. Id.  Dr. Ehyai continued medications, noting that plaintiff was not able

9    to return to work because of "the persistence of his symptomologies." AR 386-87.  In December

10   2005, plaintiff reported improvement with medications, including Lexapro and Xanax, and Dr.

11   Ehyai maintained his dosage levels. AR 385.  Dr. Ehyai continued commented that plaintiff "is

12   not able to return to his previous occupation." Id.

13        Plaintiff met with Dr. Ehyai in March 2006, reporting symptoms of anxiety, particularly in

14   stressful situations and at social events, helped by Inderal, Xanax, and Lexapro. AR 383.  On

15   examination, Dr. Ehyai observed minimal tenderness in the lower back, with negative straight leg

16   raising, no lower extremity weakness, and slightly decreased sensation in the right side, with no

17   mental status findings. Id.  Dr. Ehyai continued medications. Id.  Plaintiff complained of back

18   pain, but declined diagnostic studies, claiming that his symptoms were "not bad." AR 384.  In

19   June 2006, plaintiff told Dr. Ehyai that his symptoms had not changed significantly, and he did

20   not believe that he would be able to return "to his original job" due to worry and panic attacks.

21   AR 382.  On examination, Dr. Ehyai observed that plaintiff was pleasant and appeared to be

22   slightly anxious. Id.  Dr. Ehyai continued medications, including Inderal (for hypertension),

23   Lexapro, and Xanax. Id.  He opined that plaintiff was "not able to return to his occupation

24   because of continuing symptoms of generalized anxiety and panic attacks." Id.

25        In October 2006, plaintiff told Dr. Ehyai that he experienced occasional panic attacks. AR

26   398.  Dr. Ehyai observed that plaintiff appeared to be relaxed and not depressed. Id.  Dr. Ehyai

27   continued medications and told plaintiff to exercise regularly and find a primary care doctor. Id.

28   Plaintiff saw Dr. Ehyai four months later, in February 2007, reporting that medications helped

1    prevent panic attacks and control his anxiety; he claimed he was nonetheless unable to work,

2    speculating that in a work situation, he might become anxious and develop panic attacks.  AR

3    396.  Dr. Ehyai observed that plaintiff was "alert, oriented and pleasant," "stable," and in "no

4    acute distress," and continued plaintiff's medications.  Id.  Dr. Ehyai recommended plaintiff

5    return for a follow-up in six months or sooner if he experienced any problems.  AR 397.

6        After a sixteen-month gap in treatment, plaintiff saw Dr. Ehyai in June 2008, reporting

7    reduced sensation in the right thigh and occasional right leg pain, but denying any severe anxiety

8    attacks, tremor, or depression, and was "fairly stable."  AR 395.  Examination findings were

9    normal.  Id.  Dr. Ehyai provided medication refills and again told plaintiff to get a primary care

10   doctor for future refills.  Id.  Dr. Ehyai stated he would see plaintiff again in six months.

11   Plaintiff's insured status explored on December 31, 2008.  In June 2009, after a one-year gap in

12   treatment, plaintiff saw Dr. Ehyai for refills, reporting no significant anxiety, no weakness, and

13   occasional tingling in the right thigh. AR 394.  Plaintiff reported he was sleeping well at night,

14   and Dr. Ehyai noted plaintiff was "fairly stable."  Id.  On examination, plaintiff was alert and

15   oriented, with no apparent anxiety and normal motor function and strength.  Id.  Dr. Ehyai

16   provided refills.  Id.  Dr. Ehyai noted he would see plaintiff again in six months for a follow up.

17   AR 394.

18       In June 2010, after another one-year gap in treatment, plaintiff returned to Dr. Ehyai,

19   reporting that he was "fairly stable" on medications, but nonetheless maintaining that he was

20   unable to work because of his "underlying anxiety and panic disorder."  AR 393.  Dr. Ehyai

21   observed that plaintiff was "fairly stable" with no new neurological symptoms, provided refills,

22   and again told plaintiff to follow up with a primary care physician for any refills.  Id.  Nearly one

23   year later, in April 2011, plaintiff returned to Dr. Ehyai for refills, reporting occasional dizziness,

24   heat intolerance, and tingling sensations in the upper extremities, and wondering whether these

25   were symptoms of MS.  AR 392.  On examination, plaintiff was alert and oriented, with fluent

26   speech and no sensory deficits or muscle weakness.  Id.  Dr. Ehyai observed that plaintiff was

27   "fairly stable on medication."  Id.  He did not think plaintiff had MS, but said an MRI was

28   required to be certain.  Id.

In March 2013, after a two-year gap in treatment and after filing his application for disability, plaintiff returned to Dr. Ehyai, reporting that when untreated, his anxiety symptoms were "debilitating," but they were controlled by Xanax and Inderal. AR 439. Dr. Ehyai observed that plaintiff appeared anxious, but was alert and oriented, with fluent speech. Id. The doctor suspected "mild depression" and provided medication refills. Id.

### d. Opinions of Consultants Dr. Caruso-Radin and Dr. Warren

State agency psychological consultant Phaedra Caruso-Radin, Psy.D., reviewed the evidence of record in April 2013 and concluded that plaintiff had mild restrictions in activities of daily living; moderate difficulties in social functioning and concentration, persistence, or pace; and no episodes of decompensation. AR 79, 81-83. Although plaintiff experienced occasional panic attacks prior to his date last insured, examination findings showed that he was pleasant, oriented, and appeared only slightly anxious at appointments. AR 81. By February 2007, he reported that he no longer experienced any depression or anxiety attacks. AR 81. Dr. Caruso-Radin opined that plaintiff would be able to complete simple tasks in a low-stress environment, including understanding, remembering, and carrying out a two-step command involving simple instructions. AR 82.

State agency psychological consultant John Warren, Ed.D., reviewed the evidence of record on July 2013 and concluded that plaintiff had some functional limitations due to mental impairments, as assessed at the initial review. AR 93. Noting that plaintiff's date last insured was in December 2008, Dr. Warren observed that there was no new evidence on reconsideration that related to the relevant time period. AR 93-96.

### e. Opinion of Psychological Consultant Dr. Regazzi

Licensed psychologist Michelina Regazzi, Ph.D., examined plaintiff on February 6, 2019, after reviewing his medical records from June 2009 through July 2018. AR 1140-49. Dr. Regazzi observed that plaintiff arrived on time, after driving himself to the appointment. AR 1140. He was pleasant and cooperative, interacting appropriately, expressing his thoughts clearly, and making adequate eye contact. Id. He showed a calm mood and restricted affect. Id. Plaintiff told Dr. Regazzi that he had experienced issues with anxiety for "probably 25 years,"

1   culminating in a "bad crisis" in 2003, when he woke up one morning and felt like he was having a

2   heart attack.  AR 1140-41.  His wife took him to the emergency room, where he was diagnosed

3   with panic attacks.  AR 1141.  He was initially concerned that the symptoms, which included

4   dizziness, heat sensitivity, slurred speech, and rapid heartbeat, were due to a "medical issue," but

5   after ruling out medical issues and finding the right medication, he has been able to cope with his

6   symptoms over time.  AR 1140.  Even though his symptoms were well-controlled by medication,

7   plaintiff told Dr. Regazzi that he was unable to work, because he could not maintain a rigid work

8   schedule, as having to get up at a certain time and work within a certain timeframe would cause

9   his symptoms to flare.  AR 1140, 1143.  He did some unpaid accounting and IT work for his

10  brother in 2005 or 2006, but had not looked for a job since September 2003, when he last worked

11  as an IT manager.  AR 1140-41.

12          Plaintiff told Dr. Regazzi that he had never tried to hurt himself or others.  AR 1141.  He

13  stated that he had never participated in psychotherapy or been admitted to a psychiatric facility,

14  but he did see a psychiatrist every three months, and he took several psychotropic medications,

15  including Lexapro (escitalopram), Xanax (alprazolam), bupropion, and propranolol.  AR 1141.

16  Plaintiff reported his activities as spending time online, doing research, walking the dog, visiting

17  his 88-year-old father twice weekly, going out to dinner, attending church, socializing with

18  friends, and sometimes flying "down south" to visit his daughter and grandchildren.  AR 1141.

19  On examination, plaintiff was "very calm," alert, cooperative, neatly dressed, and well-groomed.

20  AR 1142-43.  Although he showed some deficiencies in memory, findings were otherwise

21  normal.  AR 1142.  He was able to express his thoughts well.  AR 1143.  Dr. Regazzi thought

22  plaintiff would likely benefit from CBT, as this combined with medication was shown to be "very

23  effective in significantly reducing or eliminating" symptoms of panic.  AR 1143, 1145.  Dr.

24  Regazzi found that plaintiff was not significantly limited in his ability to perform work activities

25  without special supervision, accept instructions from supervisors, and interact with coworkers and

26  the general public.  AR 1143.  He was mildly impaired in his ability to perform detailed and

27  complex tasks; moderately impaired in his ability to maintain regular attendance, perform work

28  activities on a consistent basis, and deal with usual workplace stresses; and he was markedly

1   limited in his ability to complete a normal workday or workweek without interruptions resulting

2   from a psychiatric condition.  Id.

3               f.   Opinion of Medical Expert Dr. Peterson

4        Dr. David Peterson reviewed plaintiff's entire medical record and testified over the

5   telephone at plaintiff's disability hearing after remand.  AR 523, 525.  At the hearing, ALJ Buck

6   explained that the district court had remanded the case to obtain an additional medical opinion via

7   a consultative exam to justify the weight given to Dr. Ehyai in the disability determination.  AR

8   527.  The ALJ further explained that due to procedural rules that the district court was likely

9   unaware of, she was able to order a consultative examination but she could not allow the

10  examiner to review the entire medical record.  AR 527.  For this reason, the ALJ ordered the

11  testimony of Medical Expert Dr. Peterson, who would be allowed to review the entire medical

12  file.  Id.

13       Dr. Peterson testified that the standard treatment for panic disorder is cognitive behavioral

14  therapy ("CBT"), which is "precisely what [plaintiff] was prescribed back in [2003]."  AR 530,

15  532.  Plaintiff testified that he had received psychotherapy for three or four months in mid-2004,

16  but he did not remember the name of the therapist or have any records.  AR 531-32.  Dr. Peterson

17  stated that because the standard of care for plaintiff's condition is psychopharmacology with

18  psychotherapy, and because there was no evidence that plaintiff had any contiguous

19  psychotherapy, he could not assess what plaintiff's mental function would be with the standard of

20  care.  AR 532-33.  Noting that plaintiff and his counsel had enough time to obtain any treatment

21  records, the ALJ asked Dr. Peterson to make an assessment based on the records that were

22  available.  AR 533.  Dr. Peterson opined that plaintiff had various and somewhat inconsistent

23  diagnoses of panic disorder, agoraphobia, and generalized anxiety disorder with panic.  AR 537.

24  Although plaintiff claimed he had some psychotherapy between in 2003 and 2004, the record

25  contained no documentation of ongoing psychotherapy consistent with the standard of care, and it

26  shows that plaintiff had been prescribed, but refused, CBT.  AR 537.  Dr. Peterson noted that

27  there was some mention that plaintiff did not pursue psychotherapy for financial reasons, but the

28  doctor noted that in some locations treatment was available through the public mental health

system for individuals who could not afford treatment, though he did not opine as to whether such

an option is available in Sacramento.  AR 537.  Dr. Peterson found that plaintiff had been

noncompliant with care, as confirmed by plaintiff's own testimony regarding his lack of

contiguous CBT.  AR 539.  The doctor further opined that plaintiff's description of his panic

attacks as lasting for hours was "atypical," as panic attacks typically resolve within 30 minutes.

AR 539.  He also opined that plaintiff had consistently taken benzodiazepine medications, which

is not the typical or recommended treatment for anxiety symptoms, though he noted that the

medication choice may be due to side-effects; it was not clear from the record.  AR 540.

### 2.   Standard for Reviewing Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by

treating, examining, or non-examining professionals.[3]  Lester v. Chater, 81 F.3d 821, 834 (9th

Cir. 1995), as amended (Apr. 9, 1996).

> Those physicians with the most significant clinical relationship with
> the claimant are generally entitled to more weight than those
> physicians with lesser relationships.  As such, the ALJ may only
> reject a treating or examining physician's uncontradicted medical
> opinion based on clear and convincing reasons. Where such an
> opinion is contradicted, however, it may be rejected for specific and
> legitimate reasons that are supported by substantial evidence in the
> record.

Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations

omitted).  "The general rule is that conflicts in the evidence are to be resolved by the Secretary

and that his determination must be upheld when the evidence is susceptible to one or more

rational interpretations."  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, when the ALJ resolves conflicts by rejecting the opinion of an examining

physician in favor of the conflicting opinion of another physician (including another examining

physician), he must give "specific and legitimate reasons" for doing so.  Regennitter v. Comm'r

of Soc. Sec. Admin., 166 F.3d 1294, 1298–99 (9th Cir. 1999) ("Even if contradicted by another

---

[3]  There have been recent updates to the rules on medical sources; this section of the code applies
to claims filed before March 27, 2017. See 20 C.F.R. § 404.1527.  Plaintiff's claim was filed prior
to 2017 and is therefore not impacted by the changes.

doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

### 3.   The ALJ Did Not Err in Weighing Dr. Ehyai's or Dr. Regazzi's Opinion

The ALJ in this case identified several specific and legitimate reasons for rejecting Dr. Ehyai's opinion and partially rejecting Dr. Regazzi's opinion.  With respect to Dr. Ehyai, the ALJ reasoned that (1) the treatment notes primarily summarized the plaintiff's subjective complaints, diagnoses, and treatment without documenting any significant positive objective findings to support his opinion; (2) by February 2007, Dr. Ehyai noted that the plaintiff was stable though the plaintiff himself did not believe he could work; (3) Dr. Ehyai's treatment notes state medication was effective in controlling plaintiff's symptoms; (4) plaintiff's reported symptoms were not sufficient to preclude employment, especially in light of the conservative and infrequent treatment rendered; (5) plaintiff's daily activities, including traveling by airplane, going on vacation, going to church, and socializing with friends and family contradict Dr. Ehyai's opinion of total disability; (6) plaintiff reported to Dr. Ehyai that he had panic attacks with any stressful event including driving, though other records indicate he could complete similar activities (e.g. air travel), and plaintiff's failure to be forthcoming with Dr. Ehyai may have resulted in an incomplete psychiatric profile; and (7) Dr. Ehyai's opinions regarding plaintiff's state of  total disability is not controlling as disability is a decision reserved to the Commissioner.  AR 512-13 (ECF No. 8-12).

The ALJ's explanation for discounting Dr. Ehyai is more than adequately supported. First, internal inconsistency is a legitimate basis for discounting a medical opinion, and a review of the record confirms the ALJ's conclusion that Dr. Ehyai's objective observations and findings of stability are internally inconsistent with his concurrent statements about plaintiff's inability to work.  Second, it is permissible for the ALJ to reject a physician's opinion on grounds that it was contradicted by plaintiff's own statements regarding his activities of daily living.  See Rollins v. Massanari, 261 F.3d 853 (9th Cir. 2001) (holding that an inconsistency between a doctor's opinion and the claimant's admitted daily activities is grounds for rejecting a treating source opinion); see also 20 C.F.R. § 416.927(c)(4) (explaining that more weight is given to opinions

1    that are consistent with the record as a whole).  The ALJ properly compared plaintiff's statements

2    regarding his activities of daily living with Dr. Ehyai's assessment and found them incompatible.

3    Finally, the ALJ properly discounted Dr. Ehyai's opinions as being based only on plaintiff's

4    subjective complaints.  See Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of

5    any physician, including a treating physician, if that opinion is brief, conclusory, and

6    *inadequately supported by clinical findings*.") (emphasis added).  The ALJ provided an unusually

7    abundant level of support for discounting Dr. Ehyai's opinion.

8         Likewise, the opinion of Dr. Regazzi was properly partially discounted.  The ALJ rejected

9    Dr. Regazzi's opinion that plaintiff was markedly limited in his ability to complete a normal

10   workday or workweek without interruptions resulting from a psychiatric condition.  AR 510,

11   1143.  The ALJ reasoned that "Dr. Regazzi's report itself depicts someone who has self-reported

12   limits without objective findings to support such limitations, without psychiatric hospital

13   admissions, without drug, alcohol, or legal issues, and Dr. Regazzi did not cite to any of the prior

14   records to support [her] assessment."  AR 510.  Again, the ALJ permissibly rejected the opinion

15   as being based only on plaintiff's subjective complaints.  See Thomas, 278 F.3d at 957.  Indeed,

16   such a conclusion is not surprising given that Dr. Regazzi examined plaintiff more than ten years

17   after his DLI and did not have access to the complete set of medical records, including records

18   from the relevant time period.  AR 1140-49.  The ALJ did not err with respect to evaluating the

19   physician opinions.

20        C.  The ALJ Complied with Instructions on Remand

21        Plaintiff argues that the ALJ did not comply on remand with instructions from the district

22   court, because Dr. Ehyai was again rejected in favor of non-examining physician opinions.  ECF

23   No. 15 at 20.  The court rejects plaintiff's argument.  Had the district court found that Dr. Ehyai's

24   opinion should be credited over non-examining opinions, it would have remanded for an

25   immediate award of benefits in the first instance.  Instead, the district court found that despite the

26   documented improvement and stability in Dr. Ehyai's notes, the treating records mentioned

27   continued panic attacks and other symptoms that "may nonetheless have precluded employment."

28   AR 607.  The court observed that in formulating RFC, the ALJ relied on the opinions of four

17

1   doctors, all of whom opined that plaintiff's impairments were not disabling, but found that

2   without a consultative examination, opinions of these non-examining physicians provided an

3   insufficient basis to reject the opinions of a treating physician.  AR 607-08.

4          Noting that the Commissioner had not ordered a consultative mental examination prior to

5   the ALJ's initial decision, the district court ordered a consultative examination on remand.  AR

6   607.  On remand, the ALJ did as instructed, ordering a consultative examination, and engaging

7   the assistance of a medical expert who had the opportunity to review all the evidence of record.

8   AR 527, 1140-49.  Plaintiff's argument that the ALJ's decision failed to comply with the warrant

9   on remand is meritless.

10          D.  The ALJ Properly Rejected Plaintiff's Subjective Testimony

11          Plaintiff argues that his subjective testimony was improperly rejected.  ECF No. 15 at 19-

12   20.  Plaintiff claimed that he was unable to work due to panic disorder and MS.  AR 184.  In his

13   Adult Function Report, plaintiff claimed that his impairments limited his ability to walk, talk, lift,

14   remember, concentrate, understand/follow instructions, and use his hands.  AR 208.  At his 2014

15   hearing, plaintiff stated his impairments caused him to experience "strange muscle tension" that

16   interfered with his ability to write and made him unable to control his arms.  AR 50.  He alleged

17   muscle control problems, slurred speech, and needing help lifting or steadying objects.  Id.  He

18   testified that he always had tinnitus, vertigo, and tingling in his arms.  AR 58.  He claimed that all

19   activities, even normal everyday activities, were stressful (AR 55-56), and he would be unable to

20   work at any job with a schedule because he would need to be able to back off from what he was

21   doing whenever he felt stressed (AR 60).

22          Evaluating the credibility of a plaintiff's subjective testimony is a two-step process.  First,

23   the ALJ must "determine whether the claimant has presented objective medical evidence of an

24   underlying impairment which could reasonably be expected to produce the pain or other

25   symptoms alleged. . . .  In this analysis, the claimant is not required to show that her impairment

26   could reasonably be expected to cause the severity of the symptom she has alleged; she need only

27   show that it could reasonably have caused some degree of the symptom."  Garrison v. Colvin, 759

28   F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the

1  pain or fatigue itself is not required.  Id. (internal citations omitted).  Second, if the ALJ does not

2  find evidence of malingering, the ALJ may only reject the claimant's testimony by offering

3  "specific, clear and convincing reasons for doing so."  Id. (internal citations omitted).  The Ninth

4  Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily

5  activities are inconsistent with testimony about pain, because impairments that would

6  unquestionably preclude work and all the pressures of a workplace environment will often be

7  consistent with doing more than merely resting in bed all day."  Id. at 1016.

8       As required, the ALJ considered the extent to which plaintiff's claims could reasonably be

9  accepted with the objective medical evidence and other evidence of record and concluded that

10  plaintiff's allegations were not wholly consistent with the medical evidence and other evidence of

11  record.  AR 502-03.  First, the ALJ observed that plaintiff's conservative mental health treatment

12  and minimal/absent therapy was inconsistent with the standard of care and the degree of severity

13  alleged.  AR 503, 505; see 20 C.F.R. 404.1529(c)(3)(5) (course of treatment is properly

14  considered when evaluating symptom testimony); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir.

15  1999) (ALJ permissibly considered treating physician's failure to prescribe, and the claimant's

16  failure to request medical treatment commensurate with the limitation alleged).  This conclusion

17  is borne out by the record, discussed in detail above, which reflects that plaintiff went without

18  treatment for months and sometimes years at a time, and never participated in significant

19  psychotherapy.

20       The ALJ considered plaintiff's allegations that his treatment was limited secondary to lack

21  of insurance and/or financial limitations but found them unpersuasive.  AR 502.  Although

22  plaintiff testified that he did not have medical insurance during the relevant period (AR 48), the

23  ALJ noted that he had access to multiple sources of income, including private disability benefits,

24  his wife's income and benefits from work activity, and/or an inheritance.  AR 501, 503.  The ALJ

25  also found that plaintiff presented no evidence to show that he attempted to qualify for any low or

26  no-cost county mental health services.  AR 501.  Plaintiff's failure to pursue treatment is

27  inconsistent with the degree of severity alleged.  Id., see Fair v. Bowen, 885 F. 2d 597, 603 (9th

28  Cir. 1989) (unexplained or inadequately explained, failure to follow a prescribed course of

treatment may be sufficient to discredit allegations of disabling symptoms).

Second, the ALJ observed that the objective clinical and diagnostic findings did not support the degree of limitation alleged.  AR 505.  See 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms" and their impact on your ability to work).  Plaintiff acknowledged that diagnostic testing was consistently negative, and doctors were unable to determine the case of his symptoms.  AR 623.  As discussed above, other than occasional symptoms of anxiety, findings on mental status examination were otherwise consistently unremarkable, and did not support the work-preclusive symptoms alleged.  AR 79, 381, 394, 396, 439.

Third, the ALJ observed that although plaintiff endorsed increased symptoms with stressful triggers, the record showed that plaintiff's symptoms were generally stable and well-controlled on medication.  AR 505, citing AR 381 ("doing well"), 394, 396, 439 (symptoms controlled on medication)).  See Warre v. Commissioner, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling").

Fourth, the ALJ found that plaintiff's daily activities were not consistent with the degree of limitation alleged.  AR 503-04.  See 20 C.F.R. § 404.1529 (c)(3)(i) (daily activities are properly considered in the credibility analysis).  Plaintiff had enough functional capacity to do payroll and accounting for his brother's business, help his father with computers and finances, attend church weekly, socialize with friends and family, complete and prepare his own tax return, and conduct online research.  AR 60-64, 1141.  These activities call into question plaintiff's alleged inability to concentrate (AR 51) and indicate that plaintiff is not as limited as he claims to be.  See Thomas, 278 F.3d at 958-59 (ALJ may properly consider inconsistencies between testimony and activities).

Finally, the ALJ found evidence that plaintiff attempted to misrepresent his experiences at the initial hearing to a treating physician, which may suggest an attempt to exaggerate the severity of his symptoms, reporting events differently than they occurred.  AR 472-73, 504.  In April 2014, days after the first disability hearing, plaintiff told his doctor that he had a severe panic

20

attack at the hearing, which was not consistent with the in the hearing recording.  AR 504-05.

See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ's

discussion of evidence of exaggeration was appropriate reason for discounting claimant's

testimony).  In sum, the ALJ provided more than enough specific, clear and convincing reasons

for discounting plaintiff's subjective testimony.

VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 15), is DENIED;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 20), is

GRANTED; and

3.  The Clerk of the Court shall enter judgment for the Commissioner and close this case.

DATED: March 16, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE